**UNITED STATES of America, Plaintiff,**

v.

**James A. HERNANDEZ, Defendant.**

**No. 02–40102–01–JAR.**

United States District Court, D. Kansas.

March 18, 2003.

Randy M. Hendershot, Office of United States Attorney, Topeka, KS, for U.S.

David J. Phillips, Office of Federal Public Defender, Topeka, KS, Marilyn M. Trubey, Office of Federal Public Defender, Topeka, KS, for Defendant.

*ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS*

ROBINSON, District Judge.

This matter was before the Court on Defendant's Motion to Suppress Evidence

Based on Failure to Knock and Announce (Doc. 35) on March 3, 2003. The government filed a response (Doc. 37). Following presentation of testimony, the parties were ordered to submit their final arguments in writing and the Court took the matter under advisement. The Court is now prepared to rule. For the following reasons, Defendant's motion is denied.

## I. Background

On May 2, 2002, agents with the Kansas Bureau of Investigation executed a search warrant at Defendant's residence in Moline, Elk County, Kansas. Agent Tim Holsinger testified that the search warrant was obtained the previous day and that it was not specified as a no-knock warrant. Agent Holsinger testified that he intended to apply for a no-knock warrant but "forgot." His intention to seek a no-knock entry was based on the crime the warrant sought to investigate, the manufacture of methamphetamine, being a dangerous activity; the defendant's lengthy criminal history, including two or three convictions involving firearms; and that Defendant had told Agent Holsinger that his neighbor would not be reporting him because he would put one right between her eyes. That statement was not included in the affidavit.

When the officers arrived at the residence, they found a man out in the driveway, working on a vehicle. Agents immediately began yelling commands, ordering the man to the ground. Agents were approaching the man, and the house, from the back and front. The commotion created by detaining the man outside caused several agents to shout "compromise." This code tells the other agents that their presence has been made known and an increased danger exists that those inside the house have advance warning. Agent Matt Lyon testified that he was assigned to breach the door, which would make him the primary announcer. After the commotion outside, he entered the house while simultaneously shouting "Police, search warrant." They did not knock and announce before entering. Agent Lyon testified that his training told him that once an entry team was compromised, he was to get the door open and inside as quickly as possible.

## II. Discussion

Defendant seeks to suppress the evidence found at his residence alleging the agents violated the Fourth Amendment by entering without first knocking and announcing their presence. Challenges to the knock and announce rule are many. The United States Supreme Court has visited the issue more than once.[1] The knock and announce requirement is a common law principle that became part of the reasonableness inquiry of the Fourth Amendment[2] and can be found codified in 18 U.S.C. § 3109.

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.[3]

However, this rule is not without exceptions. In *Wilson v. Arkansas,* the Supreme Court held that while a search may be constitutionally invalid if officers fail to knock and announce, there are also situa-

1. *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995); *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997).

2. *Wilson,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976.

3. 18 U.S.C. § 3109 (2000).

tions when an unannounced entry is reasonable.[4]

The search warrant in this case is one in search of evidence of narcotics violations. *Richards v. Wisconsin*[5] specifically addressed the issue of no-knock entries in cases of narcotics warrants. In *Richards*, officers had a warrant for a motel room where the defendant was staying. They went to the motel room with some officers dressed in maintenance men uniforms and others in police gear. Upon arriving, a man in a maintenance uniform knocked on the motel door and announced that he was with maintenance. Standing behind the man knocking on the door was an officer in full uniform who was, according to the defendant's own testimony, clearly visible when the door was opened. The defendant opened the door, with the chain lock still engaged, and when he saw the police he slammed it closed. Officers waited two or three seconds and then began kicking in the door and announcing themselves as they entered.

The officers in *Richards* had requested a no-knock warrant, but the magistrate deleted the portions of the warrant for that request.[6] In analyzing the defendant's challenge in *Richards*, the Court reiterated what it had previously held in *Wilson*.

> [T]he knock and announce requirement could give way under circumstances presenting a threat of physical violence, or where police officers have reason to believe that evidence would likely be destroyed if advance notice were given.[7]

The government argued for, and won at the lower court, an argument that all narcotics warrants are inherently dangerous by their nature in both physical violence as well as the danger of the destruction of evidence. The Court agreed that "felony drug investigations may frequently involve both" dangers;[8] however, it expressly refused to authorize a blanket exception to the knock and announce requirement in every felony drug case.[9] The Court stated that despite the common dangers involved in felony drug investigations, some of those dangers will not be significant enough to warrant dispensing with the knock and announce rule.[10] Thus, each case must be evaluated on its facts to determine whether dispensing with an announced entry was reasonable under the Fourth Amendment.

The standard in that determination is one of reasonable suspicion.[11] The officers must have a reasonable suspicion that announcing their presence would be dangerous, inhibit the investigation or render it futile. The Court specifically recognized the low standards imposed here, but nevertheless required that it be shown whenever a no-knock challenge is posed.

In this case, Agent Holsinger testified to the suspicion he had before the warrant was served that knocking would be dangerous. He testified that Defendant had a criminal history involving illegal possession of firearms, that the presence of methamphetamine or its precursors was not only physically danger-

---

4. *Wilson*, 514 U.S. at 937, 115 S.Ct. 1914.

5. *Richards*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615.

6. *Id.* at 388, 117 S.Ct. 1416.

7. *Id.* at 391, 117 S.Ct. 1416 (quoting *Wilson*, 514 U.S. at 936, 115 S.Ct. 1914) (internal quotations omitted).

8. *Id.* at 391–92, 117 S.Ct. 1416.

9. *Id.* at 396, 117 S.Ct. 1416.

10. *Id.* at 393, 117 S.Ct. 1416.

11. *Id.* at 394, 117 S.Ct. 1416.

ous, but also posed a risk of destruction and that during his undercover work Defendant had made a threat to shoot his neighbor if he was turned in to the police. Agent Holsinger did not, however, seek a no-knock warrant. Defendant emphasizes Agent Holsinger's failure to request a no-knock warrant as evidence of the lack of reasonableness of their subsequent entry. It has no bearing on that determination. For whatever reason, a no-knock warrant was not requested, but the determination must always be made at the time the officers entered the house.[12]

The agents had knowledge about the risks involved in this warrant prior to its execution. In light of that knowledge, a high risk entry team was employed to effectuate the search. Upon arriving at the residence, the agents found a man outside the house. In order to secure the man and ensure their safety, agents approached him from the front and rear while giving commands for him to get on the ground. This, without question, caused substantial commotion outdoors. Agent Lyon testified that the agents taking down the man outside were giving loud and forceful commands and that he believed the commands could be heard by the occupants inside the house. At that point, agents began to announce that their presence was compromised. The door was then breached without prior announcement.

■ The agent's actions were reasonable under the Fourth Amendment. They had knowledge of the dangers posed by Defendant himself as well as by the nature of the suspected illegal activity inside the house. While the relationship between drugs and violence is not so conclusive as to justify blanket exceptions, the Supreme Court recognizes that it is a frequent link and valid consideration.[13] The culminating factor that justifies the entrance without announcing was the commotion outside the house created by the need to secure the individual outside from going back inside or otherwise alerting the occupants of the house of the agent's presence. It is not necessary for this Court to determine whether a no-knock entry was justified absent the presence of the man outside the house. The agents, at the time they entered, believed their presence was compromised and had a reasonable suspicion that knocking and announcing would be dangerous or futile.

Defendant argues in his brief that the agents cannot justify their unannounced entry by creating an exigency. Defendant alleges that the agents created their own justification by causing such a loud commotion in securing the man outside the house. He cites to United States v. Richard[14] for support. In Richard, officers entered and searched a motel room without a warrant. They alleged that an exigency was present that necessitated dispensing with the warrant requirement. That exigency was that the occupants of the room knew of their presence and could destroy evidence before they obtained a warrant. The court found that the only way the occupants knew of the officers' presence was by the officers going to the door and knocking, after having searched and secured another motel room without making their presence known to the defendant. The court suppressed the evidence.

Richard is distinguishable. There, the officers could have obtained a warrant and did not even need to go to the defendant's door or make their presence known in any other manner. Here, the agents already

---

12. *Id.* at 395, 117 S.Ct. 1416.

13. *Id.* at 391, 117 S.Ct. 1416.

14. 994 F.2d 244 (5th Cir.1993).

had a warrant and were at Defendant's door. Their exigency was real and imminent and not invented to justify an unannounced entrance. The agents secured the man outside in a manner consistent with normal police procedure—by yelling commands to get on the ground. This was not unnecessary considering the circumstances.

IT IS THEREFORE ORDER BY THE COURT that Defendant's motion to suppress (Doc. 35) is denied.

**IT IS SO ORDERED.**